IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:03CR394 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | SENTENCING MEMORANDUM |
| CYNTHIA CASTELLANOS, ) | |
| ) | |
| Defendant. ) | |

This Sentencing Memorandum supplements findings made on the record at defendant's sentencing hearing on December 1, 2008.

**I.   BACKGROUND**

In 2003, defendant and several others were charged with distribution and conspiracy to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841 and 846.  The offense carries a maximum term of imprisonment of life and a mandatory minimum sentence of 10 years.  While on pretrial release after her arrest in 2003, Ms. Castellanos cooperated with law enforcement officers at first, but later but later fled the jurisdiction.  A warrant was issued for her arrest on December 1, 2003, and she was arrested in 2008 and returned to the District of Nebraska for prosecution.

Castellanos entered a plea of guilty to conspiracy to distribute more than 500 grams of methamphetamine. Filing No. 192 (no hyperlink available).  The court accepted Castellanos's plea but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of

Probation (hereinafter, "the Probation Office") that calculated the defendant's sentence under the United States Sentencing Guidelines ("the Guidelines"). *Id*.

In the PSR, the Probation Office identified U.S.S.G. § 2D1.1 as the applicable Guidelines base offense level provision. Filing No. 217, Revised Presentence Investigation Report at 10. It determined that the defendant's base offense level should be 38 under U.S.S.G. § 2D1.1(a)(3)(c)(1), based on a quantity of 21.7 kilograms of methamphetamine. *Id.* The Probation Office added a four-level enhancement under U.S.S.G. § 3B1.1(a) for defendant's role as an organizer or leader in a criminal activity that involved five or more participants, a two-level enhancement under U.S.S.G. § 3B1.4 for use of a minor to commit the offense, and a two-level enhancement under U.S.S.G. § 3C1.1(A) & (B) for obstruction of justice. *Id.* It then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1 (a) & (b), resulting in a total offense level of 43. *Id.* Defendant's criminal history category is II, as the result of 2 criminal history points assessed for a conviction for misprision of a felony in connection with a drug conspiracy in 1998. At criminal history category II and base offense level 43, Castellanos's resulting Guidelines sentencing range of imprisonment is life. *Id.* at 11.

Castellanos objected to the factual allegations of the PSR and to the assessment of enhancements for obstruction of justice and use of a minor. Filing No. 200. She also moved for a downward departure or variance, arguing that mitigating factors support a sentence below the Guideline range. Filing No. 201. Castellanos asked the court to consider her background and history. She asserted that she committed the offense while suffering from a significantly reduced mental capacity and that she suffers from an

2

extraordinary physical impairment. She suffers from Bipolar I and anemia as the result of a gastric bypass that requires frequent transfusions.

Ms. Castellanos is 47 years old. Filing No. 217, PSR at 13. She became involved in the drug conspiracy through her husband, Victor Paul Hernandez O'Choa, and his relatives, who were major suppliers of large quantities of methamphetamine from Mexico. *Id.* at 13-14. She was involved in the conspiracy for a relatively short amount of time. *Id.* at 6. Ms. Castellanos initially provided significant cooperation to law enforcement in 2003. *Id*. at 7. She assisted law enforcement in proffer interviews, in recorded phone calls to suppliers and by identifying co-conspirators' residences and storage locations. *Id.* As a result of her cooperation, several individuals were arrested and federally prosecuted. *Id.*

While on pretrial release in 2003, she was hospitalized for syncope secondary to anemia. She was confused and had reduced cognitive function as a result of her low blood count. She fled the jurisdiction after her release from the hospital. Psychiatric evidence indicates that Castellanos was suffering from significant depression and severe anemia, in addition to her bipolar disorder, at the time she absconded. Her psychiatrist stated that "clearly, such low blood counts can affect judgment and result in confusion." The psychiatrist states that it is likely that these conditions were present throughout the course of her criminal activity.

The record shows that Castellanos's husband and co-defendant, Victor Paul Hernandez-Ochoa, a key player in the conspiracy, was sentenced to 120 months, the mandatory minimum sentence for the crime. Filing No. 123. Co-defendant Nathan Thomas was sentenced to 168 months for the drug conspiracy for being a felon in possession of a firearm. Filing No. 124. Thomas's sentence was later reduced to 84 months for cooperation. Filing No. 213. Co-defendant Todd Dean Breeden was originally

sentenced to 135 months and his sentence was reduced to time served on motion of the government. Filing Nos. 117 & 205. In related cases, co-conspirators Jorge Luis Garcia-Lechuga and Eduardo Munguia-Ledezma were both sentenced to 70 months imprisonment and Mary Jo Schoenrock was sentenced to 121 months imprisonment, which was later reduced to 30 months on the government's Rule 35 motion. *See* Case Nos. 8:03CR266, Filing No. 28; 8:03CR402, Filing No. 25; 4:99CR3010, Filing Nos. 37 & 49. Michael Steven Faubus was sentenced to 352 months for the drug conspiracy and 60 consecutive months for use of a firearm in connection with a drug offense. See Case No. 8:03CR185, Filing Nos. 119 & 180.

The Probation Office recommended a downward departure from the guideline range by reason of defendant's reduced mental capacity and her physical condition. The Probation Office also noted that defendant's guideline range was significantly inflated due to her involvement in a large scale conspiracy. It recommended a sentence of 156 months. At the sentencing hearing, the defendant argued for a sentence of 120 months, the statutory mandatory minimum. The government argued for a sentence of 432 months.

## II. DISCUSSION

### A. Law

The Sentencing Guidelines are no longer mandatory. *United States v. Booker,* 543 U.S. 220, 260-61 (2005). In *Booker,* the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment. *Booker,* 543 U.S. at 226-27. In the *Booker* remedial opinion, the Supreme Court determined that the constitutional violation would be cured by modifying the federal sentencing statute to make the Guidelines effectively advisory. *Id.* at 245. Consequently, the range of choice in

4

sentencing dictated by the facts of the case has been significantly broadened. *Gall v. United States,* 552 U.S. —, —, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines to be reasonable); *Kimbrough v. United States,* 552 U.S. —, —, 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 551 U.S. —, —, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. 270, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines but are obliged to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C. § 3553(a) of the Sentencing Reform Act). District courts must therefore "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246); *Gall,* — U.S. at —, 128 S. Ct. at 596 (stating "[t]he Guidelines are not the only consideration, the district judge should consider all of the § 3553(a) factors"). These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring).

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the

5

defendant.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570 *(quoting* 18 U.S.C. § 3553(a)). The statute further provides that "in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id. (quoting* 18 U.S.C. § 3553(a)). A sentencing judge has greater familiarity with an individual case and individual defendant than the Commission or the appeals court and is "therefore 'in a superior position to find facts and judge their import under § 3353(a)' in each particular case." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting Gall,* 552 U.S. at —, 128 S. Ct. at 597).

Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at —, 128 S. Ct. at 596-97. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.,* 552 U.S. at —, 128 S. Ct. at 596. If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id.* The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the

6

standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595.

Congress established the Sentencing Commission ("the Commission") "to formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 57; *Rita v. United States,* 551 U.S. at —, 127 S. Ct. at 2464. When operating within that institutional role, the Sentencing Commission "has the capacity courts lack" and can "'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). In formulating the Guidelines, the Commission developed and used data on past practices and recidivism. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing (Nov. 2004) ("Fifteen-Year Assessment") at 14; U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567. *Gall,* 552 U.S. at —, 128 S. Ct. at 594 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Based on these sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. Fifteen-Year Assessment at 14. Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range. *See Kimbrough,* 128 S. Ct. at 574.

For policy reasons, and to conform to statutory mandatory minimum sentences, the Commission did not employ its characteristic empirical approach when setting the Guidelines ranges for drug offenses. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567;

Fifteen-Year Assessment at 15, 72-73.  Instead, the Commission attempted "to accommodate and, to the extent possible, rationalize mandatory minimum provisions established by the 1986 Anti-Drug Abuse Act" by anchoring the Guidelines to the mandatory minimum sentences.  United States Sentencing Commission, Special Report to Congress:  Mandatory Minimum Penalties in the Federal Criminal Justice System (August 1991), accessed at www.ussc.gov/reports.htm  (hereinafter, "Mand. Min. Rep't"), Summary at ii; Rep't at 17 n. 58.

The Commission thus adopted "the 1986 [Anti-Drug-Abuse] Act's weight-driven scheme." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567; *see United States v. Chapman,* 500 U.S. 453, 461 (1991) (stating that the Anti-Drug Abuse Act of 1986 provided for mandatory minimum sentences based on the weight of various controlled substances according to a "market-oriented" approach, creating a penalty scheme intended to punish large-volume drug traffickers severely).  "The 1986 Act uses the weight of the drugs involved in the offense as the sole proxy to identify 'major' and 'serious' dealers."[1] *Kimbrough,* 128 S. Ct. at 567.  The resulting Guidelines ranges for drug trafficking offenses are driven by the quantity of drugs, and keyed to statutory mandatory minimum sentences based on weight.  *Gall,* 128 S. Ct. at 594 & n.2; *Neal v. United States,* 516 U.S. 284, 291-92 (1996) (noting that in spite of "incongruities between the Guidelines and the mandatory sentencing statute," the Commission developed Guidelines to parallel the mandatory minimum sentences set out in 21 U.S.C. § 841(b)(1), using the quantities and sentences

---

[1] Although both the mandatory minimum statutes and the Guidelines calibrate punishment of drug traffickers according to quantity, the Supreme Court has acknowledged that mandatory minimum sentences are both structurally and functionally at odds with sentencing guidelines and the goals the Guidelines seek to achieve, noting that "the guidelines produce a system of finely calibrated sentences with proportional increases whereas the mandatory minimums result in 'cliffs.'" *Neal,* 516 U.S. at 291 (1996). Nonetheless, the Supreme Court has continued to affirm the scheme, leaving it to Congress to correct its disparities. *Id.*; *United States v. LaBonte,* 520 U.S. 751, 764 (1997).  Congress has not done so.

8

derived from the statute and "[t]he weight ranges reflect the Commission's assessment of equivalent culpability among defendants who traffic in different types of drugs. . . ").

Noting that larger drug dealers were subject to a mandatory minimum of ten years for a first offense and twenty years for a subsequent conviction for the same offense, the Sentencing Commission stated that "[the Act] sought to cover mid-level players in the drug distribution chain by providing a mandatory minimum penalty of five years." *Id.* at 10. Later, in "[p]erhaps the most far-reaching provision of the Omnibus Anti-Drug Abuse Act of 1988," Congress made the mandatory minimum penalties that were previously applicable to substantive distribution and importation/exportation offenses apply also to conspiracies to commit those substantive offenses, increasing "the potential that the applicable penalties could apply equally to the major dealer and the mid- or low-level participant." *Id.* at 10.

The fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice. Fifteen-Year Assessment at 23-24. To that end, prosecutors have been directed to "charge and pursue the most serious, readily provable offense or offenses that are supported by the facts of the case, except in limited, enumerated circumstances."[2] *Id.* at 24. Empirical evidence shows that charging and plea bargaining practices continue to introduce significant disparities into the sentencing regime. Fifteen-Year Assessment, Executive Summary at xii. The Commission has acknowledged that often "the value of a mandatory minimum sentence lies not in its

---

[2] In this court's experience, the Department of Justice does not always "charge and pursue the most readily provable" (beyond a reasonable doubt) crime, especially in drug prosecutions, with the result of introducing more disparity in the system. *See Booker*, 125 S. Ct. at 782 & n.11 (Stevens, J., dissenting in part) (gathering authorities and noting that "a prosecutor who need only prove an enhancing fact by a preponderance of evidence has more bargaining power than if required to prove the same fact beyond a reasonable doubt").

9

imposition, but in its value as a bargaining chip to be given away in return for the resource-saving plea from the defendant to a more leniently sanctioned charge." Mand. Min. Rep't at 14-15. The Commission also acknowledges that "[s]ince the power to determine the charge of conviction rests exclusively with the prosecution for the 85 percent of the cases that do not proceed to trial, mandatory minimums transfer sentencing power from the court to the prosecution" and "to the extent that prosecutorial discretion is exercised with preference to some and not to others," disparity is reintroduced into the system. Mand. Min. Rep't at 1; *see also* Fifteen-Year Assessment at 89 (noting that research over the past fifteen years has "consistently found that mandatory penalty statutes are used inconsistently in cases in which they appear to apply").

### B. Analysis

#### 1. Initial Guidelines Calculation

The court adopts the findings in the PSR with the following changes. Defendant's objection to a two-level enhancement for the use of a minor to commit the crime is sustained. There is no evidence that Ms. Castellanos instructed or encouraged her minor daughter to become involved in the conspiracy. The defendant's objections to enhancements for obstruction of justice and role in the offense, as well as her objection to the calculation of the base offense level, are overruled. Accordingly, the court finds defendant's base offense level under the Guidelines is 38, plus 2 for obstruction of justice, plus 4 for role in the offense, minus 3 for acceptance of responsibility, resulting in a total offense level of 41. At criminal history category II, her Guidelines range of imprisonment is 360 months to life.

### 2. Departure

The court denies the defendant's motion for a downward departure. The court will address the defendant's mental and physical health in connection with the discussion of § 3553(a) below.

### 3. 18 U.S.C. § 3553(a) Factors

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the court finds that a sentence of 180 months (fifteen years) is sufficient, but not greater than necessary to accomplish the goals of sentencing. With respect to the nature of the offense, the court notes that drug distribution is a serious crime and Ms. Castellanos was involved in a large-scale conspiracy. However, her involvement was for a relatively short period of time, roughly eight months, and she provided substantial cooperation to law enforcement after her arrest.

The court has also considered the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a)(1). Ms. Castellanos has significant mental health issues and numerous physical problems. The record shows that her judgment and cognitive abilities may have been impaired at the time of the crime and at the time she absconded. As a result of fleeing the jurisdiction, she lost the substantial benefit of her cooperation and a potential substantial assistance departure, as well as exposing herself to the obstruction of justice enhancement.

Although she does not have a significant criminal history and has no history of violence, the court is troubled by the fact that she was convicted of misprision of felony in the United States District Court for the District of Nebraska in 1997 for her involvement in a conspiracy to distribute 28 kilograms of cocaine and 532 kilograms of marijuana that also

involved money laundering. It is alleged in that case that her involvement extended to purchasing money orders, delivering drug proceeds to Denver, Colorado, and storing drugs. She received a relatively lenient sentence on that charge—ten months in prison with one year supervised release. Then, in late 2002 and 2003, she again became involved in the same business. Ms. Castellanos was involved in the drug business as a leader or organizer of a significant drug operation. The court finds she deserves a substantial prison sentence.

In formulating this sentence, the court has considered the sentencing range established by the Guidelines, but, because the drug offense Guidelines were promulgated pursuant to Congressional directive rather than by application of the Sentencing Commission's unique area of expertise, the court affords them less deference than it would to empirically-grounded Guidelines. *See Kimbrough*, 552 U.S. at —, 128 S. Ct. at 574-75. The court finds a sentence at the low end of the Guidelines range of 360 months (thirty years) would be overly long in comparison to the sentences that equally culpable co-conspirators received. The Probation Office recommends a sentence of 156 months. Although there is some merit to the Probation Office's argument that the defendant's Guidelines range is significantly inflated because of the quantities involved in the conspiracy, the court finds that sentence of 156 months would be too low, in view of the fact that the defendant's leaving the jurisdiction caused considerable damage to the government's ability to prove its case against the other co-conspirators.

The court finds a sentence of fifteen years satisfies the need to avoid unwarranted sentencing disparities. Several other co-conspirators received the benefit of their cooperation. Co-conspirator Nathan Thomas was originally sentenced to 168 months,

which was later reduced to 84 months for cooperation.  Todd Breeden was sentenced to 135 months, which was later reduced to time served (approximately 55 months) months for cooperation.  Mike Faubus was initially sentenced to 412 months, based on numerous weapons and on violent conduct in the course of conspiracy.  His sentence was later reduced to 144 months, including a sixty-month mandatory minimum for the gun charge, on the government's Rule 35 motion.  Mary Jo Schoenrock was sentenced to 121 months imprisonment, which was later reduced to 30 months on the government's Rule 35 motion.

Castellanos's husband and main supplier, Victor Paul Hernandez O'Choa, did not cooperate and was sentenced to 120 months, the mandatory minimum.  Co-conspirators Jorge Luis Garcia-Lechuga and Eduardo Munguia-Ledezma did not cooperate and were both sentenced to 70 months imprisonment.

Because of her level of involvement, the court finds that Castellanos should receive a longer sentence that co-conspirators Nathan Thomas and Todd Breeden, who were sentenced to fourteen years and eleven and a half years, respectively.  The court finds Ms. Castellanos's involvement in the conspiracy was most closely analogous to that of her husband.  Before she absconded, Castellanos and her husband deserved roughly equivalent sentences.  Because she absconded and violated the conditions of her pretrial release, the court finds that she should receive a sentence at least half again longer than Hernandez O'Choa's 120-month sentence.

The court further finds a sentence of 180 months (fifteen years) will satisfy the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the

defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. The court recommends that she participate in the Bureau of Prison's 500-hour drug treatment program. A sentence of incarceration shorter than the sentence recommended under the Guidelines is still a lengthy sentence. A fifteen-year term of imprisonment will deter others from engaging in this sort of conduct. The deterrent value of any longer sentence would be marginal. Given that the benefit to society of a longer period of incarceration would be negligible, any benefit is outweighed by the potential harm a longer sentence would have on Ms. Castellanos's physical and mental health. The need to protect society from further crimes of the defendant is accounted for in the court's imposition of a five-year period of supervised release.

    A Judgment and Commitment and Statement of Reasons in accordance with this Sentencing Memorandum will issue this date.

    DATED this 29th day of December, 2008.

                          BY THE COURT:

                          s/ Joseph F. Bataillon
                          Chief United States District Judge